IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**MARY TONEY**                                                                                                                    **PLAINTIFF**

**VS.**                     **CASE NO.  4:05CV000929 JMM**

**IC CORPORATION**                                                                                    **DEFENDANT**

**ORDER**

Pending before the Court are defendant's Motion for Summary Judgment and plaintiff's response.  For the reasons stated below, the motion is granted (# 29).

Plaintiff, an African-American, brings her complaint alleging she was discriminated against when she was terminated in retaliation and based upon her race in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1985(3), the Arkansas Civil Rights Act ("ACRA"), and the Labor Management Relations Act ("L.M.R.A.") § § 303 and 301.   Defendant contends that plaintiff has failed to present a *prima facie* case of discrimination or to rebut its nondiscriminatory reason for plaintiff's termination.

I.  *Facts*

Plaintiff began employment with defendant in February 1999.   As an employee of defendant, plaintiff was represented by the United Auto Workers Union, Local 1762 ("the Union") and governed by a contract between defendant and the Union ("the Contract").

Article XVIII of the Contract provides that:

>The use, possession, manufacture, sale, attempted sale, purchase, attempted purchase or distribution of alcohol or an illegal drug by a Team Member during a restricted period may constitute cause for discharge of the Team Member.

Def. Ex. 10 at 83.

Restricted period is defined under the Contract to include:

>anytime the Team Member is present on property owned or leased by the company, or to which the Company has access as a business invitee . . . (whether or not the Team Member is entitled to compensation from the company pursuant to a provision of this Agreement for such time).

Def. Ex. 10 at 82.

Possession or use of alcohol or drugs on company property is a major rule offense. Plaintiff was familiar with Article 18.04(a)'s prohibition against use or consumption of alcohol or illegal drugs on company property, and with the major rule offenses.

In 2004, defendant hired a private firm in Ohio to conduct an undercover operation at its plant in an effort to stop drugs from coming into the workplace. This private firm sent an investigator to Conway to conduct the undercover investigation which took place from June through October of 2004.

The private investigator prepared reports on a daily basis and emailed them to the private firm in Ohio which, in turn, forwarded the reports to John Mattox, defendant's Director of Health, Safety and Security, at his home. These reports consisted of both Daily Activity Reports ("DAR") and Incident Reports ("IR"). The DAR provided detailed accounts of contacts the investigator made during the day and the IR documented activities such as drug use, offers to sell drugs, and other company violations.

In a July 22, 2004 IR, the undercover agent reported that he agreed to purchase $20.00 worth of marijuana from plaintiff. In a September 16, 2004 IR, the undercover agent reported

that while in plaintiff's car in defendant's parking lot, plaintiff smoked marijuana and the undercover agent simulated smoking marijuana.  In a IR on that same date, the undercover agent said that later in that same day, plaintiff, the undercover agent, and another employee drank beer together in plaintiff's automobile in defendant's parking lot.  Plaintiff denies that any of these events occurred as described by the undercover agent.

Plaintiff denies that she ever smoked any marijuana or offered to sell the undercover agent any drugs.  She admits that there was beer in a cooler in her automobile on September 16, 2007, but that she was not aware of the beer until the undercover agent and a fellow employee started drinking it.  She admits that she did not stop them from drinking the beer in her automobile.

On September 21, 2004, plaintiff and two co-workers complained that a Caucasian co-worker, had hung a noose in their work area which they found offensive.    The Human Resources Manager conducted an investigation the same day that the complaint was made.  The three complaining employees, including plaintiff, stated they wanted an apology, but did not want the Caucasian co-worker to lose his job.

The Caucasian employee who hung the noose, told the Human Resources Manger that he intended it to be a joke for another Caucasian co-worker and that he did not mean it to be a racist statement.   Based on the investigation, Johnson concluded that there was no racial motivation to the incident.   The offending Caucasian employee was disciplined , but not terminated, for the incident.   The two other complaining African-American employees are still employed by defendant.

On October 4, 2006, after reviewing the undercover agents reports, Wayne Johnson, Vice President of Human Resources, terminated seven employees, including plaintiff, for violation of Article 18.04(a).  Five of the discharged employees were African-American and two were Caucasian.

The Union filed a grievance on plaintiff's behalf. The grievance was denied at each step. The Union did not pursue arbitration.

II. *Analysis*

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds.  *Iowa Coal Min. Co. v. Monroe County*, 257 F.3d 846, 852 (8th Cir.2001);  Fed. R. Civ. P. 56.   The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   The burden is on the moving party to show that the record does not disclose a genuine dispute on a material fact.  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399 (8th Cir.1995).

At the summary judgment stage in an employment discrimination action, in the absence or direct evidence of racial or ethnic discrimination, an employee must produce sufficient circumstantial evidence of illegal discrimination under the *McDonnell Douglas* paradigm, specifically, by presenting a *prima facie* case of intentional discrimination plus sufficient evidence that one or more of the employer's proffered nondiscriminatory reasons is a pretext for unlawful discrimination.  *Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004).

Under the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792,

801-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff must first establish a prima facie case of discrimination to establish a claim under Title VII. *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1046 (8th Cir. 2002). Once the plaintiff does this, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason. *Id.* If the employer satisfies this burden, the burden of production shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretext for unlawful discrimination. *Id.* To establish that an employer's legitimate, nondiscriminatory reason is pretext for discrimination, an employee must offer evidence for a reasonable trier of fact to infer discrimination. *Matthews v. Trilogy Communications, Inc.*, 143 F.3d 1160, 1165 (8th Cir.1998).

A plaintiff establishes a *prima facie* case of racial discrimination under Title VII by showing that: (1) she was a member of a protected class; (2) she was meeting the employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *See Philip v. Ford Motor Co.,* 413 F.3d 766, 768 (8th Cir. 2005).

 "To establish a prima facie case of retaliatory discrimination, a plaintiff must show: (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal connection existed between participation in the protected activity and the adverse employment action." *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 713-14 (8th Cir. 2000).

To establish a *prima facie* case under section 1981, plaintiff has to show that (1) she is a member of a racial minority; (2) the defendant intended to discriminate against her on the basis of race; and (3) the discrimination concerned an area enumerated in § 1981. *See Wortham v. American Family Ins. Group.*, 385 F.3d 1139 (8th Cir. 2004).

The Arkansas Supreme Court looks to decisions interpreting the federal civil rights laws in analyzing discrimination claims under the Arkansas Civil Rights Act.  *See*  Ark.Code Ann. § 16-123-105 (Supp.2001).  Thus plaintiff's ACRA claim would be analyzed as stated above.

Under § 301 an employee who brings "an individual suit directly against the employer for breach of the Collective Bargaining Agreement, must allege and prove the union breached its duty of fair representation."  *Waldron v. Boeing Co.*, 388 F.3d 591, 594 (8th Cir. 2004).  "This type of "hybrid" action requires the employee to show both the union breached its duty of fair representation and the employer breached the Collective Bargaining Agreement in order to prevail against the employer."  *Id.*

Under § 303 of the LRMA, labor organizations are precluded from engaging in any activity or conduct defined as an unfair labor practice.  *See*  29 U.S.C. § 187.

Plaintiff has established that (1) she was a member of a protected class; (2) she was meeting the employer's legitimate job expectations; and (3) she suffered an adverse employment action.  However, she has failed to establish that a similarly situated employees outside the protected class were treated differently.  Plaintiff contends that in 2004, guards at defendant's premises were told that Caucasian employees were drinking beer in the parking lot.  Plaintiff's witness testified that he was present when the Caucasian employees were drinking beer in the parking lot, that the guards found empty beer cans in the back of an employee's truck, and that this employee was not terminated.  Plaintiff contends she was treated differently because she was terminated for drinking beer on defendant's property, and for having beer in a cooler in her automobile.

Assuming that plaintiff was not drinking beer as reported by the undercover agent, and that she did not know about the beer being in her automobile, plaintiff admits that she not stop the others from drinking the beer in her automobile and that she did not make any efforts to remove the beer from her possession.  Based upon these facts, plaintiff has failed to demonstrate that a similarly situated employee outside her protected class was treated differently.  The employee who had empty beer cans in the back of his truck was not similarly situated to plaintiff as she had full beer cans in a cooler in her automobile.  *See Rogers v. U. S. Bank*, 417 F.3d 845 (8th Cir. 2005)( to be similarly situation at the *prima facie* stage the employees should be involved in or accused of the same or similar conduct).

Even if  plaintiff has established a *prima facie* case, she has failed to rebut defendant's legitimate non-discriminatory reasons for her termination.  Defendant contends that it terminated plaintiff based upon the reports of the undercover agent that plaintiff violated Article 18.04(a) of the Contract when she drank beer and smoked marijuana on company premises.

 Plaintiff argues pretext by contending that the undercover agent targeted her based upon her race and filed false reports.  The evidence is to the contrary in that it is undisputed that both African-American and Caucasian employees were terminated for violating Article 18.04 and plaintiff's own testimony that the undercover agent talked to others in her department, not just her.

Plaintiff contends that there is evidence of pretext because she testified  that she told management that the reports were untrue and that management chose to believe the undercover agent as opposed to her version of events. Plaintiff's testimony is insufficient to establish pretext.  "A proffered legitimate, non-discriminatory reason for termination need not, in the end, be

7

correct if the employer honestly believed the asserted grounds at the time of the termination." *Twymon v. Wells Fargo & Co.*, 462 F.3d 925 (8th Cir. 2006).  There is nothing in the record which establishes that defendant's management decision to believe the undercover agent as opposed to plaintiff, even if their decision was in error, was based on race.

Likewise plaintiff's evidence that a supervisor treated Caucasian employees more favorably than African-American employees does not create an issue of fact on pretext because this particular supervisor actions were unrelated to the termination decision.  Finally, plaintiff's testimony and evidence regarding a disciplinary action taken by defendant in July of 2003 against plaintiff and another African-American who allegedly engaged in a physical fight is unrelated to the basis for her termination in 2004.

Plaintiff has also failed to establish a retaliation claim.  She has established that she reported a fellow employee for displaying a noose on company property[1] and that she suffered an adverse employment action.  However, she has failed to establish that a causal connection existed between participation in the protected activity and the adverse employment action.

> The timing of an adverse employment action in connection with the protected activity "can sometimes establish causation for purpose of establishing a *prima facie* case." *Sherman v. Runyon*, 235 F.3d 406, 410 (8th Cir.2000). We have held that periods much longer than the three weeks in the present matter can be used to infer causation. See *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1266 (8th Cir.1997) (inference of a causal connection was found when there was a six month gap between the adverse action and the protected activity); *O'Bryan v. KTIV Television,* 64 F.3d 1188, 1193 (8th Cir.1995). "An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Peterson v. Scott*

---

[1]Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, makes it unlawful for an employer to discriminate against an employee, for among other things, "because [s]he has opposed any practice made an unlawful employment practice by this subchapter."

> *County,* 406 F.3d 515, 524 (8th Cir.2005) (*citing Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 819-20 (8th Cir.1998).

*Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903 (8th Cir. 2006). Plaintiff made the complaint concerning the noose approximately two weeks before her termination. A two week time span between the activity and the adverse employment action has been found to establish a temporal connection between the two. *Id.* However, in general more than a temporal connection is required to present a genuine factual issue on retaliation. *See Id.* at 914. Plaintiff testified that her only evidence of retaliation is that the person she reported was Caucasian.

The fact that an African-American complained about a Caucasian employee hanging a noose in the workplace and then was terminated could be enough to demonstrate a connection between her protected activity and her termination. However, for the same reasons stated above in regard to her racial discrimination claim, plaintiff has failed to rebut defendant's legitimate nondiscriminatory reason for terminating her employment. Plaintiff has failed to offer evidence for a reasonable trier of fact to infer discrimination at the pretext stage.

The Court also notes that the undercover investigation, the result of which is the stated reason for plaintiff's termination, began before plaintiff made her complaint regarding the noose.

This same reasoning applies to plaintiff's § 1981 and § § 301 and 303 of the LMRA claims. She has failed to establish defendant intended to discriminate against her on the basis of race when it terminated her employment, or that the union breached its duty of fair representation. *See Jones v. United Parcel Service, Inc.*, 461 F.3d 982 (8th Cir. 2006) (employee does not have absolute right to have grievance taken to arbitration).

III. *Conclusion*

Defendant's Motion for Summary Judgment is granted (#29) and plaintiff's complaint is dismissed with prejudice. Judgment will be entered accordingly.

IT IS SO ORDERED THIS  18   day of   December , 2006.

_____
James M. Moody
United States District Court